Sharon **CESARO**, Plaintiff–Appellee, Cross–Appellant,

v.

**LAKEVILLE COMMUNITY SCHOOL DISTRICT**, Defendant–Appellant, Cross–Appellee,

**Lakeville Education Association; Thor Petersen, Defendants, Cross–Appellees.**

Nos. 90–2158, 90–2223.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1991.

Decided Jan. 9, 1992.

Rehearing and Rehearing En Banc Denied April 17, 1992.

Gregory T. Gibbs (argued and briefed), Anthony J. Mansour, Bruce A. Newman, Flint, Mich., for Sharon K. Cesaro.

Martha J. Marcero (argued and briefed), Michael A. Eschelbach (briefed), Thrun, Maatsch & Nordberg, Lansing, Mich., for Lakeville Community School Dist., Lakeville Educ. Ass'n and Thor Petersen.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, and PECK, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant Lakeville Community School District appeals the District Court's finding that defendant discriminated against plaintiff Sharon Cesaro on the basis of sex in failing to appoint her to a newly created position of Director of Special Education. For the reasons stated below, we shall REVERSE the judgment of the District Court.

I.

Plaintiff, Sharon Cesaro, served as a special education teacher for defendant, Lakeville Community School District, beginning in 1968. Her education included a bachelor's degree in elementary education, a master's degree and an educational specialist degree. At the time of the events complained of, she completed the necessary work for a doctorate in special education except for the doctoral thesis.

In 1978 after an outside study of its special education program, the Lakeville Community School District decided to employ a Director of Special Education, an administrative position. Dr. Thor Petersen, the Superintendent of Schools, had sole discretion to decide whether to fill the position by soliciting applications from outside the school district as well as within or to open the position only to applicants from within the school district. Both of these procedures had been previously used to fill administrative positions. Petersen chose to post the position both within the school district and at major universities in Michigan. Evidence was presented at trial that before posting the position, Petersen had made remarks indicating that he did not want to promote females into administrative positions and that he did not want plaintiff in the position. It is undisputed that the plaintiff was the only person within the school district who was qualified to fill the new position.

The District Court found that a screening committee interviewed the five applicants for the position without any gender bias and presented the names of three finalists, including plaintiff, to Petersen. There was no evidence, and plaintiff did not claim, that this committee was biased in any way. Petersen then recommended Dr. Gutshall to the school board as the most qualified applicant. The District Court found Dr. Gutshall was unquestionably the most qualified for Director of Special Education. Indeed plaintiff stipulated that Dr. Gutshall was the best qualified of the candidates. The school board voted unanimously to appoint Dr. Gutshall.

Plaintiff filed a complaint in 1980 alleging sex discrimination. She alleged that Petersen posted the position rather than appoint her because she was a woman. Plaintiff claims that this discrimination in the method of selection caused the sequence of events resulting in plaintiff not being appointed to the position. Trial was held in November 1983 and the District Court issued its Findings of Fact in June 1987. The District Court found that plaintiff had been discriminated against on the basis of sex by Petersen's decision to post the position statewide and that defendant failed to provide a defense sufficient to avoid liability. It found that had Petersen opted for solely intradistrict applications, plaintiff would have been approved by the board since she was the only qualified intradistrict candidate.

## II.

■ Title VII forbids an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's ... sex." 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) (emphasis added). In the ordinary case, an inference of discrimination arises after plaintiff has made out a prima facie case of discrimination under Title VII. The employer must then rebut the inference by articulating a legitimate nondiscriminatory reason for its action. The final burden of persuasion remains on the plaintiff to show that the reasons offered by the employer were not legitimate, but were a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53; 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Plaintiff asserts, however, that this is a mixed motive case. The Supreme Court has set forth a two-part test for determining whether an employer has unlawfully discriminated against an employee when an employment decision is made on the basis of a mixture of legitimate and illegitimate considerations. When a plaintiff in a Title VII case proves that her gender was a motivating factor in an employment decision, the employer may avoid liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not considered the plaintiff's gender. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989). Gender plays a motivating part in an employment decision if one of the reasons "at the moment of the decision" was that the applicant was female. *Id.* at 250, 109 S.Ct. at 1790. Whether plaintiff's case is characterized as a pretext case or a mixed motive case, plaintiff's burden is to prove her gender played a part in the board's decision not to hire her as Director of Special Education.

■ Plaintiff has failed to demonstrate that her gender played any part in the school board's decision to hire Dr. Gutshall as Director of Special Education rather than plaintiff. The board members made the ultimate employment decision. Although the District Court's findings are not as detailed as one might like, it appears that it did find that the board acted without discriminatory intent. There is no indication in the record that the board was aware of Petersen's reason for posting statewide. Gender then was not a factor that influenced the board's decision to appoint Dr. Gutshall.

Petersen's decision to open the position to applicants outside the school district was not the ultimate employment decision that *Price Waterhouse* focuses on, and therefore Petersen's motivation in opening the position is not the relevant inquiry here. After Petersen's initial decision to open the position to outside applicants, the selection process was gender neutral. Plaintiff was not precluded from being appointed to the new position; in fact, she was one of the finalists selected by the screening committee. Had she been excluded from consideration because of Petersen's bias, his bias would have been a factor in the board's decision. Ultimately, plaintiff was not chosen for the position because she was less qualified than Dr. Gutshall. The fact that she was a woman played no part in that decision. Thus, under a literal reading of *Price Waterhouse*, plaintiff has failed to sustain her burden of proof. That we are to look at the motive of the decision maker

at the time the decision is made is reiterated several times in Justice Brennen's opinion:

> The critical inquiry, the one commanded by the words of § 703(a)(1), is whether gender was a factor in the employment decision *at the moment it was made....* When, therefore, an employer considers both gender and legitimate factors at the time of making a decision, that decision was "because of" sex and the other, legitimate considerations—even if we may say later, in the context of litigation, that the decision would have been the same if gender had not been taken into account.
>
> . . . .
>
> We conclude, instead, that Congress meant to obligate her to prove that the employer relied upon sex-based considerations in coming to its decision.
>
> . . . .
>
> In saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer *at the moment of the decision* what its reasons were and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman.

*Id.* at 241–42, 250, 109 S.Ct. at 1785–86, 1790 (footnote omitted) (emphasis added).

The Court's opinion makes clear that we consider recommendations based on gender to the extent they are relied on by the decision maker. Here, the board had the qualifications of all of the candidates and plaintiff concedes the most qualified candidate was selected.

Plaintiff argues, however, that Petersen's decision to open the selection process to outside applicants, which was motivated by sexual discrimination, establishes that gender played a part in the decision to hire Dr. Gutshall. Plaintiff asserts that Petersen's desire to exclude women from administrative positions, which resulted in his decision to receive outside applications, resulted in discrimination against her because she would have been selected for the position if Petersen had considered only internal applicants.

Plaintiff is claiming then that she was discriminated against on the basis of her sex at the moment that Petersen chose the process to be used to select the Director of Special Education, and that she is entitled to recover based on this discriminatory decision. We are unwilling to accept this theory which potentially leads to an anomalous result. Under plaintiff's theory of recovery, she would be entitled to recover even if another woman was hired by the school board under the selection process chosen by Petersen. Surely it was not Congress' intent to extend Title VII to a situation where a neutral selection process through which a woman was hired should give rise to liability to another woman who was not selected because of a decision preliminary to the hiring decision.

Plaintiff's theory also ignores the fact that even if Petersen's motive in opening the application process to outside candidates was discriminatory, a woman would still be selected by the school board if she were the most qualified candidate. It was also possible that the plaintiff would be selected by the school board as the Director of Special Education. At the time Petersen chose the selection process, it was uncertain whether any candidate more qualified than plaintiff would apply.

We find no cases similar to the present case with its two levels of decision making. Other cases support our finding that when an employer selects a more qualified candidate, a claim of discrimination by a disappointed applicant is likely to fail. *See Clark v. Huntsville City Board of Educ.,* 717 F.2d 525, 527 (11th Cir.1983); *Olafson v. Dade County School Board,* 651 F.2d 393, 395 (5th Cir.1981) (Unit B). In *McQuillen v. Wisconsin Education Ass'n Council,* 830 F.2d 659 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988), WEAC internally posted a newly created staff attorney position and five months later posted the position externally. A woman not then employed by WEAC was hired for the position. A male employee of WEAC sued under Title VII, alleging that he would have received the position absent WEAC's preference to hire a woman because of an existing

**256**

WEAC affirmative action policy. He claimed that the position was posted externally only in an effort to find a woman to fill the position. The Eighth Circuit found that the hiring procedures were generally the same as those used to hire a man for the staff attorney position created previously to the position at issue. The court found ample evidence that although the man was qualified for the position and had received a higher interview rating, he was not as qualified or as experienced as the woman who was hired. Similarly, in this case the application process did not preclude a woman from being hired if she was the most qualified applicant. Although plaintiff was qualified to be Director of Special Education, she was not the most qualified applicant.

Had the board learned of Petersen's bias and chosen the same gender neutral method of selecting the candidate that was used here to neutralize that bias, it should not be faulted for doing so. The purpose of Title VII is to focus on qualifications. That is what the employer did here.

### III.

We find that plaintiff was not discriminated against because gender was not a factor considered by the school board in its hiring decision. Although Petersen may have acted with a discriminatory motive in opening applications to outside candidates, we cannot find liability for mere use of a process by which the most qualified candidate was ultimately selected in a non-discriminatory manner. Accordingly, the judgment of the District Court is REVERSED.