**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AGAWAM FOOD MART, INC., etc., Respondent.**

**No. 7436.**

United States Court of Appeals, First Circuit.

April 21, 1970.

---

**1046**

Herman M. Levy, Washington, D. C., Atty., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Sanford H. Fisher, Washington, D. C., Atty., were on brief for petitioner.

David M. Marshall, Springfield, Mass., with whom Arthur M. Marshall, Richard B. Slosberg, and Marshall & Marshall, Springfield, Mass., were on brief for respondent.

Before ALDRICH, Chief Judge, COF-FIN, Circuit Judge, and BOWNES, District Judge.

ALDRICH, Chief Judge.

This is a petition under section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), to enforce an order based upon a finding by the National Labor Relations Board of a discriminatory discharge and a discriminatory de-

motion. Sections 8(a) (3), and (1), 29 U.S.C. §§ 158(a) (3), (1). Briefly, two employees, of known union adherence, and at a time when the employer had reason to expect an election campaign, engaged in deliberate falsification of their time cards. The one who was discharged denied having done so after he was discovered, and the other, although he admitted in part his own misconduct, may have sought to cover up for his associate. The misbehavior commenced jointly on Thursday, ripened as to one on Friday, and as to the other on Saturday, at which time the uncooperative confrontation occurred.[1] The company manager suspended both employees forthwith and stated that he would consider the matter and determine discipline early in the coming week.

The company handbook, of which the employees concededly had copies, provided that misconduct with respect to time cards was ground for serious discipline, and even summary discharge if information was falsified. We may add that lying, when apprehended, would seem clearly to magnify the offense. The manager discussed the matter with other officials on Monday, and gave the employees a further hearing on Tuesday, at which the employee who had more substantially lied persisted in denying his guilt. The discipline was then meted out.

The trial examiner, in a detailed and careful report, resolved all issues of fact in favor of the employer. The Board reversed, by a 2–1 vote, member Brown dissenting. 171 N.L.R.B. No. 121 (5/29/1968), 1968–1 CCH N.L.R.B. Dec. ¶22,525. The basis of the Board's

1. Anyone interested in the precise details will find them in the trial examiner's comprehensive report. He will discover only a portion of them in the Board's opinion reversing the examiner. He will also, if he is the student that we are obliged to be, find in another decision of the Board, in which two of the three present members sat, NLRB v. Smith & Wesson, 174 N.L.R.B.No.152 (3/6/69), 1969 CCH NLRB Dec. ¶20,630, the following statement, quoting Standard Dry Wall Products,

Inc., 91 N.L.R.B. 544, enforced 3 Cir., 1951, 188 F.2d 362.
"It is the Board's established policy not to overrule a Trial Examiner's resolutions with respect to credibility unless the clear preponderance of all the relevant evidence convinces us that the resolutions were incorrect."
In the case at bar the clear preponderance of the evidence was not contrary to any of the examiner's credibility resolutions; nor did the Board say it was.

decision was that the employees had no prior disciplinary record; that the offenses were not serious, and the discipline occurred at such a singular moment that it was too much of a coincidence to think other than that it was motivated by the company's displeasure with the employees' union activities.

It is true that on the Monday between the Saturday confrontation and Tuesday discipline the company was informed that the union was seeking an election. In stating this circumstance to be significant, and hence the cause of the discipline, the Board made no attempt to explain how, time-wise, the company's disciplinary schedule could have been any different. The Board then referred to one item of misconduct, found by the examiner, by adding its own qualification, "if it occurred." The basis for such reservation does not appear (cf. n. 1, *supra*), particularly in the light of the fact that this was the act of misconduct expressly admitted to by the employee.[2]

The Board then reached the incomprehensible conclusion that falsifying a time card so as to get paid for work not done was "a minor infraction of Company rules."[3]

In making our assessment we note that the Board was obliged to find these infractions minor in order to find that anti-union animus even existed, the trial examiner having specifically found that in the four preceding months the union had been organizing another of the company's stores and there had been no indication of such animus. None had been evidenced in this case, unless the present discipline itself established it.

██ These were not minor infractions, and the Board's characterization of them as such denigrates its claim to expertise. We regret to say this, but we also regret to have to state once again that when an employee is guilty of demonstrated misconduct the Board's burden of proof to show that discipline was meted out for an improper reason, Raytheon Co. v. NLRB, 1 Cir., 1964, 326 F. 2d 471, 475; NLRB v. Standard Coil Products Co., 1 Cir., 1955, 224 F.2d 465, 470, cert. denied 350 U.S. 902, 76 S.Ct. 180, 100 L.Ed. 792, if sought to be satisfied by inference only, must be by a highly convincing one. NLRB v. Billen Shoe Co., 1 Cir., 1968, 397 F.2d 801; *see* NLRB v. Lowell Sun Pub. Co., 1 Cir., 1963, 320 F.2d 835, 841–843 (concurring opinion); *cf.* NLRB v. United Parcel Service, Inc., 1 Cir., 1963, 317 F. 2d 912. In the case at bar we do not find even a warrantable inference, let alone a compelling one.

The order will not be enforced.

---

2. The Board added its own findings, that the misconduct was not of "great moment" because the employee had done other work "without compensation," ignoring the examiner's finding that this work had been done pursuant to a prearrangement with respect to "vacation time."

3. The rule provided that "altering or tampering with any time card is prohibited." It further provided that "falsifying information on * * * a time card" forfeited the employee's right to a "written warning before he was discharged."