THE COUNTY OF MENARD, Petitioner, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents.

Fourth District   No. 4—87—0751

Opinion filed December 7, 1988.

M. Carol Pope, State's Attorney, of Petersburg, and Andrew A. Peterson, of Jackson, Lewis, Schnitzler & Krupman, of White Plains, New York, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for other respondents.

JUSTICE KNECHT delivered the opinion of the court:

Respondent County of Menard (County) challenges the September 23, 1987, decision of the Illinois State Labor Relations Board (ISLRB or Labor Board) finding the County violated section 10(a)(2) of the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(2)), by discharging Donald Witherell, a maintenance employee at the County's Sunny Acres Nursing Home. The County contends: (1) Witherell was a statutory supervisor excluded from the Act's coverage; and (2) it discharged Witherell for reasons unrelated to protected union activity.

The events culminating in the unfair labor practice charge occur against a background of union organizing activity. On June 6, 1986, an election was conducted at Sunny Acres Nursing Home to determine if the employees there desired to be represented by the American Federation of State, County, and Municipal Employees (AFSCME or union). The County subsequently challenged certain ballots, including Witherell's. In a separate proceeding before the Labor Board, the County claimed Witherell was a supervisor under the Act and his ballot should not be counted.

The Labor Board rejected the County's attempt to relitigate

Witherell's supervisory status since the County had stipulated to Witherell's inclusion in the bargaining unit and failed to secure a preelection hearing on the matter. The ISLRB dismissed the County's objections. See *County of Menard*, 2 Pub. Employee Rep. (Ill.) par. 2037, case No. S—RC—214 (Illinois State Labor Relations Board, July 30, 1986).

In a related challenge, the County charged AFSCME with coercion in violation of section 10(b)(1) of the Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1610(b)(1).) The Labor Board upheld its executive director's dismissal of the complaint for lack of evidence. See *County of Menard*, 2 Pub. Employee Rep. (Ill.) par. 2049, case No. S—CB—182 (Illinois State Labor Relations Board, Sept. 24, 1986).

On August 21, 1986, Witherell was dismissed by the Menard County Board (County Board), which has the exclusive authority to hire and fire employees. On September 5, 1986, the union filed charges with the ISLRB. The Labor Board's executive director issued a complaint December 24, 1986, alleging violations of sections 10(a)(1) and 10(a)(2) of the Act. Following hearings, the hearing officer issued a recommended decision March 24, 1987. The hearing officer concluded that since the County Board possessed no antiunion motivation, Witherell was not unlawfully fired. The ISLRB adopted the hearing officer's factual findings but reversed his conclusions of law. The cause was remanded to the hearing officer to determine whether the nursing home's administrator, Warren Dick, possessed illegal motivation in bringing the charges against Witherell which resulted in the termination of Witherell's employment by the County Board. See *County of Menard*, 3 Pub. Employee Rep. (Ill.) par. 2043, case No. S—CA—87—46 (Illinois State Labor Relations Board, June 1, 1987).

The hearing officer issued his supplemental recommended decision and order July 8, 1987. The hearing officer found Dick was motivated by antiunion hostility and the discharge was based on Witherell's protected activity, resulting in violations of the Act. The Labor Board adopted the hearing officer's supplemental decision September 23, 1987; however, the Labor Board found that several findings of antiunion hostility made by the hearing officer in the supplemental decision were not supported by the record. The Labor Board concluded that, even so, enough evidence of antiunion motivation existed in the record to support the hearing officer's conclusion. (See *County of Menard*, 3 Pub. Employee Rep. (Ill.) par. 2058, case No. S—CA—87—46 (Illinois State Labor Relations Board, Sept. 23, 1987).) The County's petition for review followed.

On appeal, the County initially argues it should be allowed to re-

litigate the issue of Witherell's supervisory status. The ISLRB and the union maintain the previous stipulation continues to be binding in the absence of changed circumstances.

The record shows the hearing officer rejected the County's attempt to relitigate this issue. It did, however, allow the County's counsel to make an offer of proof:

"[COUNTY'S COUNSEL]: Okay. Mr. Hearing Officer, if allowed to present the witnesses and the testimony that I intend to present, I believe that I would show that under the criteria that this Board has adopted, under the standards of the National Labor Relations Board which this Board looks to for guidance, this particular employee is a statutory supervisor and he would not be part of the bargaining unit. Thank you."

■ In making an offer of proof, counsel must explicitly state what excluded testimony would reveal and not merely allude as to what might be divulged by such testimony. (*People v. Brown* (1982), 104 Ill. App. 3d 1110, 433 N.E.2d 1081.) Counsel here failed to state the facts relied upon or by whom he intended to make such proof. The form here was inadequate. (See *People v. Clark* (1956), 9 Ill. 2d 400, 137 N.E.2d 820.) Consequently, we affirm the ISLRB'S ruling denying the attempt to relitigate this issue. *County of Menard*, 3 Pub. Employee Rep. (Ill.) par. 2058, at VIII—373 n.2, case No. S—CA—87—46 (Illinois State Labor Relations Board, Sept. 23, 1987).

Turning to the second issue, the County contends Witherell's discharge did not violate the Act. AFSCME and the ISLRB maintain the Labor Board's decision was correct. The parties exhibit some confusion over the proper standard of review to be applied. The County argues the ISLRB's findings are not supported by substantial evidence taken as a whole, citing *Universal Camera Corp. v. NLRB* (1951), 340 U.S. 474, 95 L. Ed. 456, 71 S. Ct. 456. AFSCME contends this court should affirm if the Labor Board's findings are supported by substantial evidence. The ISLRB maintains its decision was not against the manifest weight of the evidence.

■ Judicial review of a final order of the ISLRB is taken directly to the appellate court. (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e).) Section 11(e) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)), governing appeals from Labor Board decisions, by its terms incorporates the provisions of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). Upon review, findings and conclusions of the administrative agency on questions of fact are considered *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088; *Board of*

*Education of Plainfield Community School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 906, 493 N.E.2d 1130, 1135-36.) Courts may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary or capricious manner, or the administrative decision is contrary to the manifest weight of the evidence. (*Murdy*, 103 Ill. 2d at 391, 469 N.E.2d at 1088.) Findings are against the manifest weight of the evidence when a contrary result is clearly evident. *Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 1002-03, 467 N.E.2d 635, 637.

■■ As a general rule, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (*Blum v. Bacon* (1982), 457 U.S. 132, 141, 72 L. Ed. 2d 728, 736, 102 S. Ct. 2355, 2361; *Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536, 508 N.E.2d 1058, 1062.) An administrative agency's interpretation is not binding, however, and it will be rejected when it is erroneous. (*Securities Industry Association v. Board of Governors of the Federal Reserve System* (1984), 468 U.S. 137, 142-43, 82 L. Ed. 2d 107, 113, 104 S. Ct. 2979, 2982; *Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365, 504 N.E.2d 89, 94.) The decisions of the National Labor Relations Board (NLRB) and the Federal courts interpreting similar provisions under the National Labor Relations Act (NLRA) (29 U.S.C. §151 *et seq.* (1982)) are persuasive authority. The Labor Board is not, however, bound to interpret the Act as the NLRB or the Federal courts have interpreted the NLRA. *East Richland Education Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 878, 902; *Hardin County Education Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 174.

Under the Act it is an unfair labor practice for an employer or its agents to "interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act." (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(1).) It is also an unfair labor practice for an employer or its agents to "discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization." Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(2).

Central to our decision is the test applied by the ISLRB. Respondent urges adoption of the test set forth in *Wright Line, a Division of Wright Line, Inc.* (1980), 251 N.L.R.B. 1083, 105 L.R.R.M. 1169, *enforced* (1st Cir. 1981), 662 F.2d 899, 108 L.R.R.M. 2513, *cert. denied* (1982), 455 U.S. 989, 71 L. Ed. 2d 848, 102 S. Ct. 1612, and approved

by the Supreme Court in *NLRB v. Transportation Management Corp.* (1983), 462 U.S. 393, 76 L. Ed. 2d 667, 103 S. Ct. 2469. AFSCME argues the *Wright Line* test was applied by the Labor Board. The ISLRB contends the test applied below was correct.

Under *Wright Line*, as approved in *Transportation Management*, the complaining party has the burden of showing that the employee's union activity was a substantial or motivating factor in the discharge or, stating it another way, that the adverse action was based, at least in part, on antiunion animus. Once that *prima facie* case has been shown, the burden shifts to the respondent to prove by a preponderance of the evidence that the discharge would have taken place absent the employee's protected activity. If the employer meets his burden, no violation occurred. This shifting does not change the complaining party's burden of proving the elements of an unfair labor practice. *Transportation Management*, 462 U.S. at 401, 76 L. Ed. 2d at 675, 103 S. Ct. at 2474.

In *Wright Line*, the NLRB expressed dissatisfaction with tests which had evolved to determine the causal connection between the employee's protected conduct and the employer's action. The NLRB expressly rejected the "in part" test, under which a discharge was improper if it was motivated, even in part, by hostility to protected activity, even if a legitimate business reason was also relied upon. This test had come under attack for its inability, in cases where the discharge was based partly on antiunion animus and partly on employee misconduct, to resolve the conflict between the employer's legitimate right to enforce its own rules and the employee's right to participate in protected activities without fear of employer retaliation. Under the "in part" test, the employer's legitimate business reason for discharge is of no consequence once the employee establishes employer hostility towards the union. See *Wright Line*, 251 N.L.R.B. at 1084, 105 L.R.R.M. at 1170-71.

The NLRB also explicitly rejected the "dominant motive" test, which required the complaining party to show, in cases involving employee misconduct and antiunion animus, why the employer rejected the permissible reason for discharge and chose the impermissible one. See *Wright Line*, 251 N.L.R.B. at 1084-86, 105 L.R.R.M. at 1171-72; see also *NLRB v. Lowell Sun Publishing Co.* (1st Cir. 1963), 320 F.2d 835, 842, 53 L.R.R.M. 2480, 2485 (Aldrich, J., concurring) ("[t]he improper motive must be shown to have been the dominant one"); *NLRB v. Billen Shoe Co.* (1st Cir. 1968), 397 F.2d 801, 803, 68 L.R.R.M. 2699, 2701 (mere existence of antiunion animus insufficient to find unfair labor practice; NLRB must find an "affirmative and

persuasive reason why the employer rejected the good cause and chose a bad one").

The NLRB found the interests of employer and employee best served by a test akin to the two-part test formulated by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle* (1977), 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568. That test, applied in the context of a first amendment challenge, required the employee to establish the protected conduct was a substantial or motivating factor in the discharge. Once this was established, the burden shifted to the employer to demonstrate it would have reached the same decision absent the protected conduct. The NLRB reasoned the test protected both parties. The employee only had to show that protected activities played a part in the decision to discharge. The employer was allowed to show it would have dismissed the employee for reasons unrelated to protected activity. *Wright Line*, 251 N.L.R.B. at 1089, 105 L.R.R.M. at 1174-75.

In enforcing the NLRB's order in *Wright Line*, the First Circuit Court of Appeals noted the "in part" test ran the risk of immunizing employees from otherwise unforgivable conduct once antiunion animus had been established. The "in part" test would result in a violation if the discharge was even partially motivated by opposition to union membership. In effect, it would put the employee in a better position than he would have held had he not engaged in protected activity. The court found the better approach to be to look at the actual cause of the dismissal and to determine whether the discharge would have occurred "but for" the protected activity. *Wright Line*, 662 F.2d at 903, 108 L.R.R.M. at 2516.

In *State of Illinois (Departments of Central Management Services & Corrections)*, 1 Pub. Employee Rep. (Ill.) par. 2020, at VIII—121, case No. S—CA—54 (Illinois State Labor Relations Board, Sept. 13, 1985), the ISLRB expressly declined to adopt *Wright Line* and set forth its approach to dual motive cases:

> "When a Charging Party demonstrates that an adverse employment action was motivated, at least in part, by his having engaged in protected activities, we will find a violation of the Act, which will raise a presumption that the standard make whole remedy is appropriate. To rebut this presumption, the burden will be upon the employer to demonstrate that the same action would have been taken for legitimate reasons even in the absence of the protected activities. If the employer fully meets this burden in a discharge situation, it will not be required to grant the Charging Party reinstatement and back pay. Rather,

the only remedy will be the posting of a notice."

The Labor Board explained its rationale:

> "This approach safeguards the interests of both parties. Using this standard, an employer will not be free to use illegal motives in its disciplinary process; if it does so, it will be found guilty of an unfair labor practice and will, at a minimum, be required to post a notice so advising its employees. Therefore, the right of all employees to be free from discriminatory employment actions is protected. Conversely, an employer will not be required to provide a full remedy to an employee whose own misconduct would have resulted in discipline for the legitimate reasons, merely because his protected activities may also have been considered." *State of Illinois (Departments of Central Management Services & Corrections)*, 1 Pub. Employee Rep. (Ill.) par. 2020, at VIII—121, case No. S—CA—54 (Illinois State Labor Relations Board, Sept. 13, 1985).

See also *Town of Decatur*, 4 Pub. Employee Rep. (Ill.) par. 2003, case No. S—CA—87—82 (Illinois State Labor Relations Board, Nov. 23, 1987) (violation of Act found if charging party shows the employee's protected activity was a "motivating factor" in employer's decision; if employer demonstrates the adverse action would have occurred absent protected activities, the posting of a notice is the only remedy required); *City of Freeport*, 3 Pub. Employee Rep. (Ill.) par. 2046, at VIII—315, case No. S—CA—87—15 (Illinois State Labor Relations Board, June 24, 1987) (the *"Wright Line* test is not the law under the Illinois Act"); *Township of Worth*, 3 Pub. Employee Rep. (Ill.) par. 2019, case No. S—CA—143 (Illinois State Labor Relations Board, Feb. 26, 1987) (hearing officer found violation of Act and ordered makewhole remedy, but did not determine whether employer would have been discharged absent protected activity; Labor Board found employer met burden of showing employee would have been discharged anyway and ordered posting only).

In noting that the "'in part" test had been deemed "plainly rational and acceptable" by the Supreme Court (see *State of Illinois (Departments of Central Management Services & Corrections)*, 1 Pub. Employee Rep. (Ill.) par. 2020, at VIII—123 n.13, case No. S—CA—54 (Illinois State Labor Relations Board, Sept. 13, 1985)), the Labor Board looked to the following sentence from *Transportation Management* tracing the evolution of the NLRB's thinking on the matter:

> "This construction of the Act—that to establish an unfair labor practice the General Counsel need show by a preponderance of the evidence only that a discharge is in any way motivated by a

desire to frustrate union activity—was plainly rational and acceptable. The Board had adhered to that construction of the Act since that time." (*Transportation Management*, 462 U.S. at 398-99, 76 L. Ed. 2d at 673, 103 S. Ct. at 2473.)

However, in *Transportation Management*, the Court approved the NLRB's adoption of *Wright Line* test, which expressly rejected the "in part" test.

The Labor Board has stated the only distinction between the *Wright Line* test and the ISLRB's test is that a successful showing by the employer defeats the entire violation under *Wright Line*, whereas, under the Labor Board's test, a successful showing by the employer defeats only the appropriateness of a full remedy. *State of Illinois (Departments of Central Management Services & Corrections)*, 1 Pub. Employee Rep. (Ill.) par. 2020, at VIII—123 n.14, case No. S—CA—54 (Illinois State Labor Relations Board, Sept. 13, 1985).

Nonetheless, the distinction between the tests has occasionally been blurred. In *Departments of Central Management Services & Conservation*, 2 Pub. Employee Rep. (Ill.) par. 2032, case No. S—CA—95 (Illinois State Labor Relations Board, June 27, 1986), the charging party alleged, *inter alia*, a violation of section 10(a)(2), claiming the employer changed a park attendant's hours and duties in retaliation for filing a grievance. The Labor Board adopted the hearing officer's decision. The hearing officer, in determining the employer did not commit a section 10(a)(2) violation, stated the charging party had the burden of showing the employer knew the employee engaged in protected activity, the employer was motivated by an intent to encourage or discourage union membership, and the employer's conduct actually had the prohibited effect. In a footnote, the hearing officer added:

> "The Charging Party must also make a *prima facie* showing sufficient to support an inference that protected activity was a substantial or motivating factor in the employer's decision to discipline; and (2) [*sic*] once this is established the employer has the burden of demonstrating that the same action would have taken place even in the absence of the protected activity. *Wright Line, Inc.* supra. See *Gerald Morgan*. 1 PERI par. 2020 (Ill. SLRB 1985)." *Departments of Central Management Services & Conservation*, 2 Pub. Employee Rep. (Ill.) par. 2032, at VIII—224 n.7, case No. S—CA—95 (Illinois State Labor Relations Board, June 27, 1986).

The Labor Board has stated its test accomplishes the Act's objectives more fully than either the *Wright Line* or "in part" tests standing alone. (*State of Illinois (Departments of Central Management &*

*Corrections*) 1 Pub. Employee Rep. (Ill.) par. 2020, at VIII—121, case No. S—CA—54 (Illinois State Labor Relations Board, Sept. 13, 1985).) We disagree.

Section 11(c) of the Act states in pertinent part:

> "The party on whom the burden of proof rests shall be required to sustain such burden by a preponderance of the evidence. If, upon a preponderance of the evidence taken, the Board is of the opinion that any person named in the charge has engaged in or is engaging in an unfair labor practice, then it shall state its findings of fact and shall issue and cause to be served upon the person an order requiring him to cease and desist from the unfair labor practice, and to take such affirmative action, including reinstatement of public employees with or without back pay, as will effectuate the policies of this Act. *** If there is no preponderance of evidence to indicate to the Board that the person named in the charge has engaged in or is engaging in the unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the complaint." (Ill. Rev. Stat. 1987, ch. 48, par. 1611(c).)

This is similar to the provisions of section 10(c) of the NLRA, which state in relevant part:

> "If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: *** If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause." 29 U.S.C. §160(c) (1982).

The Illinois Act does not contain the "for cause" provision, which was added to the NLRA in 1947. The NLRB in *Wright Line* suggested the shifting burden of proof found support in section 10(c) of

the NLRA, but the court of appeals and Supreme Court took a differing view. (See *Wright Line,* 251 N.L.R.B. at 1088, 105 L.R.R.M. at 1173-74 ("support for the *Mt. Healthy* test of shifting burdens is found in the 1947 amendment of section 10(c)"); *Wright Line,* 662 F.2d at 904 n.8, 108 L.R.R.M. at 2516-17 n.8 (legislative history and statutory language of section 10(c) inconclusive as to burden of proof; "for cause" portion of section 10(c) reaffirms section 8(a)(3)'s implicit standard indicating NLRB is not to interfere with employers' right to fire for cause); *Transportation Management,* 462 U.S. at 401 n.6, 76 L. Ed. 2d at 675 n.6, 103 S. Ct. 2474 n.6 ("The 'for cause' proviso was not meant to apply to cases in which both legitimate and illegitimate causes contributed to the discharge").) Furthermore, the Supreme Court in *Transportation Management* found the *Wright Line* shifting burdens of proof consistent with section 10(c)'s requirement that the violation be found based on a "preponderance of the testimony." (*Transportation Management,* 462 U.S. at 401-03, 76 L. Ed. 2d at 675-76, 103 S. Ct. 2474-75.) We find the *Wright Line* shifting burdens of proof consistent with the provisions of section 11(c) of the Act, which requires proof by a preponderance of the evidence.

Section 11(a) of the Act states: "In any hearing conducted by the Board, neither the Board nor the member or agent conducting the hearing shall be bound by the rules of evidence applicable to courts, except as to the rules of privilege recognized by law." (Ill. Rev. Stat. 1985, ch. 48, par. 1611(a).) The Labor Board's rules provide: "Considering the nature of the case and the representatives of the parties, the hearing officer will, insofar as practicable, apply the rules of evidence applicable in Illinois courts." (80 Ill. Adm. Code 1200.130 (1986).) Preponderance of evidence is defined as "[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." (Black's Law Dictionary 1064 (5th ed. 1979).) The party with the burden of proof must persuade the trier of fact that the proposition on which the party has the burden of proof is more probably true than not true. Illinois Pattern Jury Instructions, Civil, No. 21.01 (2d ed. 1971).

The test employed by the Labor Board fails to give the employer the opportunity to offer evidence in opposition to prove it did not engage in or is not engaging in the unfair labor practice. Put another way, the employer is precluded from persuading the trier of fact that the proposition on which the party has the burden of proof (here, whether the employer engaged in or is engaging in an unfair labor practice) is more probably not true than true. As the ISLRB's current test is applied, the employer is entitled to show by a preponderance of

the evidence the discharge would have occurred absent the protected activity, but this evidence goes only to defeat the appropriateness of the make-whole remedy, not the existence of the violation itself. Thus, the employer's evidence of legitimate discharge, under the Labor Board's current mode of analysis, is not weighed with the charging party's evidence of the unfair labor practice for purposes of determining whether a violation occurred. Moreover, the employer cannot escape the presumption of a violation once the *prima facie* case is established and must at least post a notice even if it shows by a preponderance of the evidence the employee would have been fired absent the protected activity. This does not result in proof by a preponderance of the evidence and is contrary to the Act's provisions.

We realize that in some contexts, the Labor Board's method of analysis finds support. In *Wisconsin Department of Employment Relations v. Wisconsin Employment Relations Comm'n* (1985), 122 Wis. 2d 132, 361 N.W.2d 660 (District 1199W/United Professionals for Quality Health Care, complainant), the Wisconsin Supreme Court expressly rejected *Wright Line* in favor of the "in part" test. It looked to Wisconsin's long history of "fostering a favorable climate for labor unions," and the advantage the *Wright Line* test gives to the employer, in determining that the "in part" test better effectuated the purposes of Wisconsin's State Employment Labor Relations Act. (*Wisconsin Department of Employment Relations*, 122 Wis. 2d at 141-42, 361 N.W.2d at 665.) Despite its reliance on the "in part" test, the court ruled evidence of the employer's legitimate reasons for discharge would not be excluded, but considered with all of the employee's evidence in determining the employer's motive. *Wisconsin Department of Employment Relations*, 122 Wis. 2d at 142-43, 361 N.W.2d at 665.

The court also stated:

> "Additionally, in dual motive cases, evidence that legitimate reasons contributed to the employer's decision to discharge the employee can be considered by the WERC in fashioning an appropriate remedy." *Wisconsin Department of Employment Relations*, 122 Wis. 2d at 143, 361 N.W.2d at 666.

In *Transportation Management,* the Supreme Court acknowledged the NLRB could have formulated its test differently:

> "We assume that the Board could reasonably have construed the Act in the manner insisted on by the Court of Appeals. We also assume that the Board might have considered a showing by the employer that the adverse action would have occurred in any event as not obviating a violation adjudication but as going

only to the permissible remedy, in which event the burden of proof could surely have been put on the employer. The Board has instead chosen to recognize, as it insists it has done for many years, what it designates as an affirmative defense that the employer has the burden of sustaining. We are unprepared to hold that this is an impermissible construction of the Act." *Transportation Management*, 462 U.S. at 401-02, 76 L. Ed. 2d at 675-76, 103 S. Ct. at 2474-75.

The Wisconsin view is a minority one which we rejected in *Hardin County*. The Supreme Court's comment in *Transportation Management* accompanied its finding that the approach ultimately taken by the NLRB was reasonable under the NLRA and entitled to deference. We decline to inject life into a test which contravenes the language of our Act and which is unsupported by the persuasive authority of NLRA precedent.

This presents two distinct problems. In the first instance, the existence of the *prima facie* case which creates an irrebuttable presumption requires the imposition of some sanction even when the employer can demonstrate the employee would have been terminated in any event for legitimate reasons. In the second instance, refusing to allow the employer to rebut the *prima facie* case always subjects an employer to a sanction even when it might present evidence which, in addition to showing the employee would be terminated also, would dispel the *prima facie* case. The employer cannot disprove the violation. This is inconsistent with the approach taken by the Second District in *Rockford Township Highway Department v. Illinois State Labor Relations Board* (1987), 153 Ill. App. 3d 863, 506 N.E.2d 390, in which the court, relying on *Transportation Management*, applied the *Wright Line* shifting burdens of proof in a discriminatory discharge case under section 10(a)(2) of the Act. The First District, relying on *Rockford Township*, also has approved application of the shifting burdens of proof in determining a discharge violated section 10(a)(2) of the Act. (*City of Burbank v. Illinois State Labor Relations Board* (1988), 168 Ill. App. 3d 885, 893, 523 N.E.2d 68, 73.) This court affirmed the adoption of the *Wright Line* test by the Illinois Educational Relations Board in *Hardin County Education Association v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, involving a discriminatory discharge case under section 14(a)(3) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(3)), which is analogous to section 10(a)(2) of the Act. We recognized the *Wright Line* test as an appropriate method of balancing the competing interests of the employer and employee in

discriminatory discharge cases.

■ We hold that in discriminatory discharge cases brought under section 10(a)(2) of the Act, the complaining party must show, as its *prima facie* case, that the employee's protected conduct was a substantial or motivating factor in the discharge. Once this *prima facie* case is established, the burden shifts to the employer to prove by a preponderance of the evidence that the employee would have been discharged absent the protected activity. If the employer meets this burden, no violation of the Act occurred. The charging party retains the burden of proving by a preponderance of the evidence that the employer committed an unfair labor practice.

■ Here, the Labor Board adopted the hearing officer's supplemental decision and order, stating the hearing officer properly analyzed all the issues presented. Although the hearing officer did consider the reasons advanced by the County for its discharge of Witherell, he also stated, "I therefore find that while Dick may have been motivated by these 'legitimate business justifications,' *he was also motivated by his union animus. Because Dick's animus played a part in his discharge recommendation,* I find that the County violated the Act in discharging Witherell." (Emphasis added.) (*County of Menard*, 3 Pub. Employee Rep. (Ill.) par. 2058, at VIII—376, case No. S—CA—87—46 (Illinois State Labor Relations Board, Sept. 23, 1987).) Thus, the hearing officer did not weigh the evidence presented by the parties to determine whether AFSCME proved its case by a preponderance of the evidence. Evidence of the County's asserted legitimate reasons for discharging Witherell was taken by the Labor Board, but used only to fashion the remedy. This is contrary to the provisions of section 11(c) of the Act.

Therefore, we affirm the Labor Board's decision with respect to the supervisory issue. On the issue of Witherell's discharge, we reverse and remand this cause to the ISLRB for application of the *Wright Line* test to the facts found below.

Affirmed in part; reversed in part and remanded with directions.

LUND and GREEN, JJ., concur.